UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CORINE A. FULLER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 04-8271 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| JO ANNE B. BARNHART ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff protectively filed an application for disability insurance benefits on May 14, 2002 alleging that she had been disabled since December 15, 2001 due to neck, shoulder, arm, and hand pain from ruptured cervical discs and a pinched nerve, and nerve damage in both arms. [JS1-2; Administrative Record ("AR") 70]. After plaintiff's applications were denied initially and on reconsideration, an administrative hearing was conducted before Administrative Law Judge Robert K. Rogers (the "ALJ"). During the hearing, plaintiff was represented by

counsel and testified on her own behalf. A vocational expert also testified. [See AR 176-193].

In a written decision dated January 26, 2004, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work, provided she performed no more than occasional overhead work with her left (non-dominant) arm. [AR 24]. The ALJ determined that plaintiff's RFC did not preclude her from performing her past relevant work as an administrative assistant. [AR 23-24]. The Appeals Council denied review of the ALJ's decision denying benefits. [AR 4-6].

Plaintiff and defendant have stipulated that the ALJ fairly and accurately summarized the material medical evidence and testimony of record. [JS 2-3].

**Statement of Disputed Issue**

The sole disputed issue is whether the ALJ articulated legally sufficient reasons for rejecting plaintiff's testimony concerning the nature and effects of her subjective symptoms. [JS 3].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

Plaintiff contends that the ALJ failed to articulate adequate reasons for rejecting the alleged severity of plaintiff's testimony regarding pain and functional limitations.

The ALJ found that plaintiff had severe cervical spondylosis[1] with myelopathy[2], lumbosacral sprain/strain, and radiculopathy[3], but he rejected plaintiff's testimony regarding the severity of her subjective symptoms and the resulting functional limitations. As summarized by the ALJ, plaintiff's August 2003 hearing testimony indicated that

> she is unable to engage in work activity due to neck and back pain. She cannot sit for long periods, and looking at a computer causes neck and shoulder and arm pain. She has muscle spasms and pinched nerves in her neck. [Plaintiff] estimated that she can sit 15-30 minutes, then becomes uncomfortable and must walk around to relieve neck and back discomfort. [She] testified that she has foot pain due to hell spurs and has problems walking due to giving-way episodes of her legs. She tires after walking one block. Treatment has consisted of chiropractic treatment for a month, pain pills; and she has seen Doctor Yoshida since May 2003.

[AR 20].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341, 345

---

[1] Cervical spondylosis refers to stiffening or fixation of the cervical vertebra and "often [is] applied nonspecifically to any lesion of the spine of a degenerative nature." Stedmans Medical Dictionary spondylosis (27th ed. 2000).

[2] Myelopathy means damage to, or degeneration of, the spinal cord or spinal cord tissue. Stedmans Medical Dictionary myelopathy (27th ed. 2000).

[3] Radiculopathy is a disorder of the spinal nerve roots. Stedmans Medical Dictionary radiculopathy (27th ed. 2000).

(9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he deems to be not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (stating that an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons").

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ; Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ gave specific, convincing reasons for his credibility evaluation, and those reasons are supported by substantial evidence in the record. First, he noted "the lack of ongoing and significant objective clinical findings" to corroborate her subjective complaints of disabling symptoms and limitations. [AR 20]. While a lack of objective medical evidence cannot provide the sole basis for discrediting excessive pain complaints, it is one factor the ALJ may consider.

4

Bunnell, 947 F.2d at 345 (explaining that the absence of medical findings to support the degree of severity alleged "is just one factor to be considered in evaluating the credibility of the testimony and complaints"); see, e.g., Osenbrock, 240 F.3d at 1166 (holding that the ALJ permissibly discredited the claimant's subjective complaints where the objective evidence did not corroborate the severity of the alleged symptoms and the treating doctor released the claimant for return to "light duty work"). As the ALJ observed, cervical spine MRIs taken in March 1997and February 1998 showed a moderate disc space bulge at C5-6 and a mild disc space bulge at C6-7, with little change between the two studies. [AR 19, 112-116]. Neither of those bulges was displacing or effacing the cervical cord, and there was a normal signal within the cervical cord. [AR 113-116]. X-rays of plaintiff's feet taken in September 1999 showed some joint and bone abnormalities.[4] [AR 18-19]. Plaintiff, however, does not allege that she became disabled until December 2001, about four years after the second of those MRIs, and there is no medical evidence of a change or deterioration in her condition during that period. In July 2002, the ALJ noted, the Commissioner's consultative neurologist, Dr. Behnam Farahdel, concluded that plaintiff's cervical spine x-ray (which showed some disc disease at C2-C4) "does not demonstrate any significant findings." [AR 19, 119, 121]. Other than discomfort upon moving her left arm, plaintiff's physical and neurological examinations findings were unremarkable. [See AR 117-120]. Dr. Farahdel opined that plaintiff had no work-related physical restrictions other than a limitation to occasional overhead lifting with the left upper extremity and lifting or carrying no more than 50 pounds occasionally and 25 pounds frequently. [AR 120].

In addition, the ALJ noted that plaintiff saw Dr. Yoshida only once, in April 2003, for complaints of back, neck, and arm pain. [AR 19-21, 144-160]. Plaintiff exhibited restrictions in flexion and extension of the spine and spasm in the trapezius, and her x-ray showed evidence of cervical spine disease. Dr. Yoshida diagnosed cervical spondylosis with myelopathy, lumbosacral sprain/strain, and radiculopathy, and he prescribed Vicodin. The ALJ accepted Dr.

---

[4] In her brief, plaintiff contends that she had MRIs taken on January 30, 2001, but the MRI she cites was taken on February 21, 1998. [See JS (citing AR 114)].

5

Yoshida's diagnoses, but he also noted that Dr. Yoshida refused to refill plaintiff's Vicodin prescription after August 2003 or to sign a physical capacities questionnaire that was completed without his consent (apparently by plaintiff or her attorney) because "patient did not follow up, was last seen 4/29/03, unable to determine prognosis, was only seen 1 time. [Patient] failed MRI appt. & did not follow up anymore." [AR 145].

Given the dearth of findings in the reports of Drs. Farahdel and Yoshida, the ALJ did not err in concluding that the objective medical evidence gave no indication that plaintiff was as limited as she alleged. The ALJ also pointed out that there were no findings of disuse muscle atrophy or wasting "commonly associated with severe pain," no evidence of problems with concentration or cognitive deficits from pain, and no statements by plaintiff's physicians corroborating the existence of severe, unremitting pain. [AR 21].

In addition, the ALJ permissibly relied on the opinions of the treating, examining, and non-examining physicians to discredit plaintiff's testimony. [See AR 19-21]. As noted above, Dr. Yoshida was unable to offer a prognosis, refused to sign the assessment form presented to him, and discontinued Vicodin after three months because he had seen plaintiff only once and she failed to follow up. The examining neurologist, Dr. Farahdel, opined that plaintiff could perform what amounts to medium work, subject only to a restriction in lifting overhead with the left arm. The non-examining state agency physician agreed with Dr. Farahdel. [AR 122-129]. Those opinions buttress the ALJ's finding that plaintiff's impairments were not as severe as she alleged. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (holding that the ALJ did not err in discounting the claimant's assertions that his back impairment precluded employment where no treating or examining doctor stated or implied that the claimant was disabled, and where their reports did not disclose findings suggestive of disability).

The ALJ also took note of plaintiff's sparse treatment history for the back and neck complaints that she said left her unable to work beginning in December 2001. Plaintiff received chiropractic treatment from February 8, 2001 through April 30, 2001, after which it was noted that she did not return for further treatment. [AR 161-172]. In her June 2002 disability report, she did not indicate that she was currently under the care of a physician, and she reported

6

having seen a doctor (other than a chiropractor) most recently in 1999. She also reported taking only acetaminophen, 2 to 6 tablets daily, for pain. [AR 72-73, 105].

The record contains no reports of medical treatment during the two-year period between April 2001 and April 2003, when plaintiff went to Dr. Yoshida for complaints of back pain. [AR 136-160]. Dr. Yoshida prescribed Vicodin along with an MRI and return visit. [AR 150]. Plaintiff refilled the Vicodin prescription Dr. Yoshida gave her until August 2003, but there are no further progress notes from Dr. Yoshida.[5] In a "Residual Functional Capacity Assessment Form" that is undated but is stamped "received" on November 3, 2003, Dr. Yoshida wrote that plaintiff failed to attend an MRI appointment or to follow up with him after her initial visit, facts he cited in refusing to make a prognosis or assess her functional capacity. [AR 145-147].

Plaintiff's failure to seek or obtain consistent or ongoing medical treatment and her failure to follow up with Dr. Yoshida are factors that the ALJ is entitled to consider in assessing her complaints of chronic, disabling pain. See Bunnell, 947 F.2d at 346 (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony); see, e,g,, Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ did not err in discounting the claimant's subjective back complaints in view of a three-year gap in treatment and treating physician's reliance on conservative treatment); Matthews, 10 F.3d at 679-680 (holding that the ALJ did not err in rejecting the claimant's pain complaints and in finding an RFC for a narrowed range of medium work where the claimant was undergoing only chiropractic treatment and had minimal use of pain medication or other measures to relieve allegedly disabling pain).

With respect to plaintiff's allegations of foot pain due to heel spurs and "giving way" of her legs, the ALJ noted that the record was devoid of evidence of treatment for those

---

[5] The prescription records reflect that on August 4, 2003, Dr. Yoshida refused to refill the prescription. [AR 137-138]. It is not entirely clear, but it appears he may have approved another request on August 8, 2003 calling for a total of five refills (his earlier prescriptions did not allow any refills). [See AR 136-141].

complaints. [AR 21]. Dr. Farahdel, moreover, reported that although plaintiff had reduced sensation in her left lower extremity compared to the right, she had full range of motion in the lower extremities and a normal gait, and he assessed no limitations in walking or standing. [AR 117-121].

The ALJ also concluded that inconsistencies between plaintiff's descriptions of her daily activities in her disability report and in her testimony detracted from her credibility because there was no medical evidence to explain those inconsistencies. According to her daily activities questionnaire dated June 2002, plaintiff "lives alone, grocery shops, washes dishes, and does light dusting. She drives, runs errands without assistance, waters the grass and does very light gardening. She reported that she could walk a mile." [AR 21-22]. In her testimony, however, she said she lived with a roommate, did "basic" grocery shopping, a little cooking, and light loads of laundry. [AR 182-183]. She testified that she could not sit for more than 30 minutes at a time due to a "pinched nerve," could not stand for more than 15 minutes due to heel spurs, and could walk only a block because her she got tired and "can feel it in my legs," and her leg sometimes gave out. [AR 183-185]. Although the range of activities plaintiff described in her written report is not highly probative of an ability to work, the ALJ did not rely on that factor in isolation, and he permissibly drew a negative inference because the inconsistencies between her written report and testimony were significant and were unexplained by the medical evidence. See Johnson, 60 F.3d at 1434 (holding that the ALJ's credibility assessment was supported by inconsistencies in the claimant's testimony and contradictions between her testimony and the medical evidence).

The reasons articulated by the ALJ for his credibility assessment were specific and convincing, and they are supported by substantial evidence in the record. Based on his assessment of plaintiff's testimony and medical evidence, the ALJ found that plaintiff retained the RFC for medium work with a limitation in overhead reaching with the left arm. [AR 24]. The vocational expert testified that plaintiff's past work as an administrative assistant was sedentary, both as she performed it and as generally performed. [See AR 23]. The ALJ concluded that plaintiff was not disabled because she could perform that sedentary job, which

is well within the maximum RFC he assigned her.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: July 26, 2005

/s/

_____
ANDREW J. WISTRICH
United States Magistrate Judge